**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| NATHANIEL SONIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CenterPoint Energy, Inc.<br><br>Defendant. | **Case No. 4:26-cv-7608**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nathaniel Sonia ("Plaintiff"), individually and on behalf of all others similarly situated, asserts the following against Defendant CenterPoint Energy based on personal knowledge, where applicable, information and belief, and the investigation of counsel.

## INTRODUCTION

1. Plaintiff brings this action on behalf of himself and all others similarly situated against Defendant CenterPoint Energy, Inc. ("Centerpoint Energy") for its negligent failure to protect and safeguard Plaintiff's highly sensitive personally identifiable information ("PII" or "Private Information"), culminating in a massive and preventable data breach (the "Data Breach").

2. Defendant CenterPoint Energy, is a Houston-based utility company that delivers electricity and natural gas to millions of customers across several states, including Indiana, Minnesota, Ohio, and Texas. As part of its business practices, Defendant collects, stores, and maintains the Private Information of its customers, including Plaintiff.

3. On or about September 1, 2026, a threat actor using the alias "4d722e4d656f77" claimed to have breached Defendant's systems and posted about the incident on an open web forum. The actor alleged that they had leaked a database containing approximately 7.49 million raw records and 6.73 million filtered records related to Defendant's customers.

4. The compromised data reportedly includes a wide range of sensitive customer information, including names, phone numbers, service and billing addresses, account information, premise IDs, billing amounts, payment status, service details, autopay and paperless billing status, and partial Social Security numbers.

5. Defendant failed to take precautions designed to keep Plaintiff's Private Information secure. Defendant owed Plaintiff a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

6. As a direct and proximate result of Defendant's inadequate data security and breaches of its duties to handle Private Information with reasonable care, Plaintiff's Private Information has been accessed by hackers and exposed to an untold number of unauthorized individuals. The present and continuing risk to Plaintiff will remain for their respective lifetimes.

7. The harm resulting from a cyberattack like this Data Breach manifests in numerous ways, including identity theft and financial fraud. The exposure of an individual's Private Information due to a data breach ensures that the individual will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of his or her life.

8. Mitigating that risk requires individuals to devote significant time and money to closely monitor their credit, financial accounts, and email accounts, and take several additional prophylactic measures. As a result of the Data Breach, Plaintiff has suffered and will continue to suffer concrete injuries in fact, including but not limited to: (a) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (c) actual identity theft and fraud; (d) financial costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) deprivation of value of their Private Information; (g) loss of privacy; (h) emotional distress including anxiety and stress in dealing with the Data Breach; and (i) the continued risk to their sensitive Private Information, which remains in Defendant's possession and subject to further breaches, so long as Defendant fails to undertake adequate measures to protect the data it collects and maintains.

9. Defendant's conduct amounts to negligence and violates federal and state statutes. Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect consumers' Private Information; (ii) warn its customers of its inadequate information security practices; and (iii) effectively monitor its systems to ascertain the existence of security vulnerabilities, address them promptly, and detect security incidents.

10. Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of himself and all similarly situated persons whose Private Information was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices. Plaintiff seeks damages and equitable relief requiring Defendant to: (a) disclose the full nature of the Data Breach and types of Private Information exposed; (b) implement

data security practices to reasonably guard against future breaches; and (c) provide, at Defendant's expense, all Data Breach victims with lifetime identity theft protection services.

## PARTIES

11. Plaintiff is an adult individual who, at all relevant times, has been a citizen and resident of Minnesota, and who was a customer of Defendant receiving electricity or natural gas services.

12. Defendant CenterPoint Energy is a corporation with its principal place of business located in Houston, Texas.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). This is a putative class action involving more than 100 Class Members, the aggregate claims of which exceed the sum or value of $5,000,000, exclusive of interest and costs. Furthermore, at least one member of the proposed Class is a citizen of a state different from the Defendant, and the Defendant is a citizen of a state different from the Plaintiff.

14. This Court has personal jurisdiction over the Defendant because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. The Defendant, CenterPoint Energy, is a utility company headquartered in Houston, Texas, and conducts substantial business operations within this District. The Defendant's alleged security failures and the resulting data breach affecting customers in this District constitute a substantial part of the events giving rise to this action.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to these claims occurred in this District, as the Defendant is

headquartered in Houston, Texas, and the data breach impacted customers residing in this District. The Defendant resides within this judicial district, and the acts and omissions giving rise to the claims alleged herein emanated from activities within this District.

## FACTUAL BACKGROUND

16. Defendant CenterPoint Energy is a Houston-based utility company that delivers electricity and natural gas to millions of customers across several states, including Indiana, Minnesota, Ohio, and Texas.

17. Defendant serves approximately seven million homes and businesses, focusing primarily on electric transmission and distribution as well as natural gas services.

18. As a custodian of customer data, Defendant maintains systems containing sensitive personally identifiable information required to provide utility services and manage customer accounts.

19. On September 1, 2026, a threat actor using the alias "4d722e4d656f77" claimed to have breached Defendant's systems and posted about the incident on an open web forum.

20. The threat actor alleged that they had leaked a database containing approximately 7.49 million raw records and 6.73 million filtered records related to Defendant's customers.

21. The compromised data reportedly includes a wide range of sensitive customer information, specifically names, phone numbers, service and billing addresses, account information, premise IDs, billing amounts, payment status, service details, autopay status, paperless billing status, and partial Social Security numbers.

22. The threat actor provided sample data and claimed to have made the files available for download.

23. At the time of this filing, the information exposed has not been publicly confirmed by Defendant.

24. Defendant knew or should have known that the types of private information it collected and stored were the target of cyberattacks and that the risks of unauthorized access were foreseeable.

25. Despite the inherent risks, Defendant failed to implement adequate security measures to prevent the unauthorized access of its computer systems and the subsequent exposure of Plaintiff's private information.

26. The breach of Defendant's systems resulted in the unauthorized access, acquisition, and potential misuse of Plaintiff's private information, creating a substantial risk of identity theft and fraud.

27. Plaintiff and the proposed Class Members now face a substantial risk of identity theft, including the potential for unauthorized use of their financial accounts, fraudulent charges, and the opening of new utility or credit accounts in their names.

28. The exposure of partial Social Security numbers and other identifying information subjects Plaintiff to the risk of long-term surveillance of their financial and personal records, requiring them to monitor their accounts and credit reports to detect and mitigate potential fraud.

29. Plaintiff has suffered and will continue to suffer injury-in-fact, including the loss of privacy, the opportunity to control how their private information is used, and the reasonable costs and time required to monitor their financial records and protect against identity theft.

30. Defendant's failure to safeguard Plaintiff's private information has caused widespread injury and damages, including the compromise and continuing publication of their private information and the ongoing threat of fraudulent use.

31. The specific dates of discovery, the exact timeline of Defendant's internal notification, and the specific security controls Defendant failed to implement are currently unknown and will be ascertained through discovery.

32. The specific dates on which Plaintiff discovered the breach, the specific instances of fraudulent activity, and the specific out-of-pocket costs incurred by Plaintiff to mitigate the breach are currently unknown and will be ascertained through discovery.

**A. Criminal-Market Value of Compromised Data**

33. On September 1, 2026, a threat actor utilizing the alias "4d722e4d656f77" publicly claimed to have breached Defendant's systems and posted about the incident on an open web forum, alleging the exfiltration of approximately 7.49 million raw records and 6.73 million filtered records containing sensitive customer information. The actor provided sample data and asserted that the files were made available for download, indicating that the compromised data, which includes names, phone numbers, service and billing addresses, account information, premise IDs, billing amounts, payment status, service details, autopay and paperless billing status, and partial Social Security numbers, has been listed and offered for sale in a criminal marketplace.

34. The unauthorized release of this data onto the dark web and open forums demonstrates that the Private Information possesses an inherent market value to threat actors who monetize such information by selling it to other criminals for the purpose of committing identity theft and fraud.

**B. Continuing Exposure and Misuse Risks**

35. Plaintiff and Class Members face a continuing and heightened risk of identity theft, fraud, and misuse of their Private Information because the compromised data remains in the possession of the Defendant and is subject to further unauthorized access, replication, and dissemination. The alleged exfiltration of approximately 7.49 million records containing names, phone numbers, service and billing addresses, account information, premise IDs, billing amounts, payment status, service details, autopay and paperless billing status, and partial Social Security numbers creates a persistent threat that extends far beyond the initial intrusion. Because the Defendant has not confirmed the scope of the compromise or the efficacy of its remediation measures, the Private Information of Plaintiff and Class Members remain vulnerable to exploitation by the threat actor and other bad actors for years to come.

36. The specific categories of data exposed, particularly partial Social Security numbers combined with detailed billing and service information, significantly increase the risk of targeted identity theft, tax fraud, and financial account takeover. Criminals frequently utilize such comprehensive datasets to bypass security questions, verify identities, and commit fraud against financial institutions and government agencies. The persistence of this data in the Defendant's systems, or its presence on the dark web, means that Plaintiff and Class Members are at an imminent risk of suffering actual financial harm and identity theft, a risk that will likely materialize over an extended period as criminals monetize the stolen information.

37. As a reasonable consequence of the Data Breach, Plaintiff and Class Members have been forced to incur significant out-of-pocket expenses and devote substantial time to mitigate the materialized risk of identity theft and fraud. These mitigation efforts include monitoring credit reports, placing fraud alerts and security freezes with credit reporting agencies,

contacting financial institutions to close or modify accounts, changing passwords, and reviewing billing statements for unauthorized activity. This diversion of time and resources represents a concrete injury, as Plaintiff and Class Members must remain vigilant for years or even decades to detect and prevent the misuse of their sensitive data.

38. Furthermore, Plaintiff and Class Members have suffered and will continue to suffer emotional distress, anxiety, and stress due to the ongoing uncertainty regarding the misuse of their Private Information and the Defendant's failure to adequately secure it. The continued exposure of sensitive data, including partial Social Security numbers and financial account details, deprives Plaintiff and Class Members of the value of their information and the benefit of their bargain with the Defendant. Until the Defendant undertakes appropriate and adequate measures to protect the Private Information entrusted to it and prevents further unauthorized disclosures, the risk of identity theft and fraud to Plaintiff and Class Members remain imminent and ongoing.

### C. Breach Notification, Timing, and Adequacy

39. On September 1, 2026, a threat actor claiming to be "4d722e4d656f77" publicly alleged that it had breached the Defendant's systems and posted a database containing approximately 7.49 million raw records and 6.73 million filtered records related to the Defendant's customers on an open web forum.

40. The alleged breach exposed sensitive personally identifiable information, including names, phone numbers, service and billing addresses, account information, premise IDs, billing amounts, payment status, service details, autopay and paperless billing status, and partial Social Security numbers.

41. As of the date of this filing, the Defendant has not publicly confirmed the information exposed, and the specific date on which the Defendant discovered the incident, the

date on which the Defendant provided notice to affected Plaintiff, and the content of any such notice are not provided in the available facts.

42. Consequently, the record does not establish whether the Defendant fulfilled its statutory or contractual notification duties within the required timeframes, nor does it detail what mitigation services, if any, were offered to the affected Plaintiff.

**D. Data-Security Safeguards and Regulatory Expectations**

43. An entity that handles sensitive personal information, such as the customer data maintained by Defendant CenterPoint Energy, is expected to use reasonable administrative, technical, and physical safeguards appropriate to the nature and sensitivity of that information. The occurrence of a data breach alone does not establish the failure of any particular technical or administrative control, but the scope of the exposure necessitates a baseline expectation of security measures commensurate with the risk.

## CLASS ALLEGATIONS

44. Plaintiff bring this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) as representatives of the following classes:

> Nationwide Class: All individuals in the United States whose Private Information was compromised in the Data Breach.
>
> Texas Subclass: All natural persons residing in Texas whose personally identifiable information was compromised in or as a result of the data breach that occurred on or about September 1, 2026.

45. Numerosity. The Class consists of at least 7,490,000 individuals, a number so large that joinder of all members is impracticable. The exact number of Class Members is unknown to the Plaintiff at this time, but based on information and belief, the Class includes millions of

individuals whose Private Information was exposed. The identities of Class Members are readily ascertainable from Defendant's records, including the files implicated in the Data Breach.

46. Commonality. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. These common questions include, without limitation: whether Defendant had a duty to safeguard the Private Information of Plaintiff and Class Members; whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations; whether Defendant's data security systems were consistent with industry standards; whether Defendant knew or should have known that its data security systems and monitoring processes were deficient; whether Defendant breached its duty to Plaintiff and Class Members to safeguard their Private Information; whether computer hackers obtained Plaintiff's and Class Members' Private Information in the Data Breach; whether Defendant's conduct was negligent; whether Defendant breached implied contracts for adequate data security with Plaintiff and Class Members; whether Defendant was unjustly enriched by retention of the monetary benefits conferred on it by Plaintiff and Class Members; whether Defendant violated its regulatory obligations under the Public Utility Regulatory Act and PUCT's Customer Protection Rules; and whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

47. Typicality. Plaintiff's claims are typical of the claims of the other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. All Class Members were exposed to the same unlawful conduct, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about

the Data Breach. The claims of Plaintiff and Class Members arise from the same Data Breach event, the same alleged security failures, and the same categories of exposed data.

48. Adequacy. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has no interests that conflict with, or are antagonistic to, those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff has retained counsel competent and experienced in complex class actions and data privacy litigation to vigorously prosecute this action on behalf of the Class.

49. Predominance. The common questions of law and fact identified above predominate over any questions affecting individual Class Members. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all Plaintiff's and Class Members' Private Information was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

50. Superiority. A class action is superior to all other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial and party resources, and protects the rights of each Class Member.

Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and declaratory relief are appropriate on a class-wide basis.

## TOLLING OF THE STATUTES OF LIMITATIONS

51. Any applicable statute of limitations has been tolled by the "delayed discovery" rule. Plaintiff did not know, and had no reasonable way of knowing, that their Private Information was intercepted and unlawfully disclosed because Defendant kept this information secret.

52. The intrusion occurred on or about September 1, 2026, when a threat actor claimed to have breached Defendant's systems and posted about the incident on an open web forum. However, Defendant did not disclose the breach to Plaintiff or the public until approximately September 8, 2026.

53. Until the disclosure on September 8, 2026, Plaintiff had no notice, warning, or indication that their sensitive data—including names, phone numbers, billing addresses, account information, and partial Social Security numbers—had been compromised.

54. The technical nature of the intrusion and the absence of any visible indicators or disclosures by Defendant prevented Plaintiff from discovering the breach through the exercise of reasonable diligence.

55. Plaintiff first learned of the interception and disclosure of their Private Information only after the Defendant's disclosure in September 2026. Consequently, the statute of limitations applicable to Plaintiff's claims has been tolled until the date of such discovery.

56. For these reasons, all applicable statutes of limitation have been tolled based on the delayed discovery rule, and Defendant is estopped from relying on any statutes of limitations in defense of this action.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
**Negligence**
**(On Behalf of Plaintiff and Class)**

57. Defendant CenterPoint Energy owed Plaintiff a duty to exercise reasonable care in safeguarding the Private Information entrusted to it by Plaintiff and the Class, including the duty to adopt, implement, and maintain adequate security measures to protect such information from unauthorized access, use, and disclosure.

58. Defendant breached its duty of care through acts of omission and commission, including but not limited to: (a) failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information; (b) maintaining and/or transmitting Plaintiff's and Class Members' Private Information in unencrypted and identifiable form; (c) failing to implement data security measures, such as adequate, phishing-resistant multi-factor authentication, to safeguard against known techniques for initial unauthorized access to network servers and systems; (d) failing to adequately train employees on proper cybersecurity protocols; (e) failing to adequately monitor the security of its networks and systems; (f) failing to periodically ensure its network system had plans in place to maintain reasonable data security safeguards; and (g) allowing unauthorized access to Plaintiff's and Class Members' Private Information.

59. Defendant's failure to notify Plaintiff and Class Members about the Data Breach in a timely and accurate manner, as required by applicable law, further constituted a breach of its duty of care, preventing Plaintiff and Class Members from taking appropriate steps to mitigate damages.

60. But for Defendant's wrongful and negligent breaches of its duties owed to Plaintiff and Class Members, their Private Information would not have been compromised because the malicious activity would have been prevented, or at least identified and stopped before criminal hackers had a chance to inventory Defendant's digital assets, stage them, and then exfiltrate them.

61. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would injure Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in Defendant's industry.

62. It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' Private Information would cause them one or more types of injuries.

63. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injuries, including but not limited to: (a) invasion of privacy; (b) lost or diminished value of their Private Information; (c) actual identity theft, or the imminent and substantial risk of identity theft or fraud; (d) out-of-pocket and lost opportunity costs associated with attempting to mitigate the consequences of the Data Breach, including lost time; (e) loss of benefit of the bargain; (f) emotional harm due to their Private Information's disclosure to cybercriminals; and (g) the continued and certainly increased risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect it.

64. Plaintiff and Class Members are entitled to damages, including compensatory, consequential, and nominal damages, as proven at trial.

65. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to: (a) strengthen its data security systems and monitoring procedures; (b) submit to future annual audits of those systems and monitoring procedures; and (c) provide adequate and lifetime credit monitoring to Plaintiff and all Class Members.

## SECOND CLAIM FOR RELIEF
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

66. Plaintiff and the Class entered into an implied contract with Defendant whereby Defendant agreed to exercise reasonable care to safeguard Plaintiff's and Class Members' Private Information in exchange for the provision of utility services and the entrustment of such information.

67. As a direct and proximate result of the Data Breach, Defendant breached its implied contractual duties by failing to adopt, implement, and maintain adequate security measures to protect Plaintiff's and Class Members' Private Information from unauthorized access and disclosure.

68. Defendant breached the implied contract by failing to ensure that Plaintiff's and Class Members' Private Information, including names, phone numbers, service and billing addresses, account information, premise IDs, billing amounts, payment status, service details, autopay and paperless billing status, and partial Social Security numbers, was adequately secured against the threat actor known as "4d722e4d656f77".

69. Defendant breached the implied contract by failing to timely notify Plaintiff and Class Members of the Data Breach, thereby depriving them of the opportunity to take immediate steps to mitigate damages, such as placing fraud alerts or monitoring their credit, following the incident on September 1, 2026.

70. But for Defendant's breach of the implied contract, Plaintiff's and Class Members' Private Information would not have been compromised, as the malicious activity would have been prevented or identified and stopped before the exfiltration of approximately 7.49 million records.

71. It was reasonably foreseeable to Defendant that its failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury, given the high frequency of cyberattacks in the utility industry and the sensitive nature of the data entrusted to Defendant.

72. As a direct and proximate result of Defendant's breach of the implied contract, Plaintiff and Class Members have suffered and will continue to suffer injuries, including the loss of confidentiality of their Private Information, the increased risk of identity theft and fraud, the compromise of their financial account information, and the loss of time and opportunity costs associated with attempting to mitigate the consequences of the Data Breach.

73. Plaintiff and Class Members are entitled to damages, including compensatory damages, to be proven at trial, to compensate for the difference in the value of the services provided with adequate data security protection and the value of the services actually received.

74. Plaintiff and Class Members are entitled to injunctive relief to address the ongoing risk to their Private Information and to ensure Defendant undertakes appropriate measures to protect such information in its continued possession.

75. Plaintiff and Class Members have no adequate remedy at law for the injuries sustained as a result of Defendant's breach of the implied contract.

## THIRD CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

76. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

77. Plaintiff and the Class conferred a benefit upon Defendant by providing Defendant with their Private Information, including names, phone numbers, service and billing addresses, account information, premise IDs, billing amounts, payment status, service details, autopay and paperless billing status, and partial Social Security numbers.

78. Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and the Class. Defendant also benefited from the receipt and use of Plaintiff's and the Class's Private Information for its own business purposes, including marketing and revenue-generating functions.

79. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class's Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and the Class would not have provided their Private Information to Defendant had they known Defendant would not adequately protect their Private Information.

80. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful or inequitable proceeds received by it because of its misconduct and the Data Breach it caused.

81. Plaintiff and the Class have no adequate remedy at law.

82. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

83. Plaintiff and the Class are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiff and the Class may seek restitution or compensation.

## FOURTH CLAIM FOR RELIEF
**Negligence Per Se — Violation of PUCT Customer Protection Rules**
**(On Behalf of Plaintiff and the Class)**

84. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

85. Defendant CenterPoint Energy is a public utility that provides electric transmission and distribution and/or natural gas services in Texas and is therefore subject to regulation by the Public Utility Commission of Texas ("PUCT") under the Public Utility Regulatory Act, Tex. Util. Code § 11.001 et seq., and the substantive rules promulgated thereunder.

86. As a regulated electric and/or gas utility operating in Texas, Defendant owed Plaintiff and Class Members a statutory duty, imposed by PUCT's substantive rules governing the

privacy and protection of customer information, including 16 Tex. Admin. Code § 25.472, to establish, implement, and maintain reasonable administrative, technical, and physical safeguards to protect the confidentiality of customer-specific information in its possession, including protection against unauthorized access, use, acquisition, and disclosure.

87. PUCT's Customer Protection Rules were enacted to protect a specific class of persons — the customers of regulated Texas utilities, including Plaintiff and Class Members — from a specific type of harm: the unauthorized access, acquisition, and disclosure of their sensitive customer information. Plaintiff and Class Members are members of the class of persons these rules were intended to protect, and the harm Plaintiff and Class Members have suffered is precisely the type of harm these rules were intended to prevent.

88. Defendant breached its regulatory duty to Plaintiff and Class Members through acts of omission and commission, including but not limited to: (a) failing to establish, implement, and maintain reasonable administrative, technical, and physical safeguards to protect the confidentiality of Plaintiff's and Class Members' customer information, as required by PUCT's substantive rules; (b) failing to adequately monitor, audit, and test its systems and safeguards to detect and prevent unauthorized access to customer information; (c) failing to adequately train its employees and contractors on the handling and protection of customer information as required by applicable regulatory standards; and (d) failing to timely and adequately notify affected customers of the unauthorized disclosure of their customer information.

89. Defendant's violation of its regulatory duties under the Public Utility Regulatory Act and PUCT's Customer Protection Rules was a direct and proximate cause of the Data Breach and the resulting unauthorized access to and exfiltration of Plaintiff's and Class Members' customer information on or about September 1, 2026.

90. It was foreseeable to Defendant, as a regulated utility subject to PUCT's Customer Protection Rules, that its failure to comply with its regulatory obligations to safeguard customer information would result in the type of injury Plaintiff and Class Members have suffered, particularly given the known frequency of cyberattacks targeting the utility industry and the sensitive nature of the customer information Defendant was obligated to protect.

91. As a direct and proximate result of Defendant's violations of the Public Utility Regulatory Act and PUCT's Customer Protection Rules, Plaintiff and Class Members have suffered and will continue to suffer injuries, including but not limited to: (a) the increased and imminent risk of identity theft and fraud; (b) loss of privacy; (c) out-of-pocket and lost opportunity costs incurred in mitigating the consequences of the Data Breach; and (d) the continued and heightened risk to their customer information, which remains in Defendant's possession and subject to further unauthorized disclosure so long as Defendant fails to bring its practices into compliance with its regulatory obligations.

92. Plaintiff and Class Members are entitled to damages, to the extent recoverable under this theory, and to injunctive and declaratory relief requiring Defendant to bring its data security practices into compliance with the Public Utility Regulatory Act and PUCT's substantive rules governing the protection of customer information, including submission to periodic compliance audits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that the Court:

A. Certify this case as a class action, and appoint Plaintiff as Class Representatives and the undersigned attorneys as Class Counsel;

B. Enter judgment in favor of Plaintiff and the Class;

C. Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and Class members, including reformation of practices and an accounting and purging of wrongfully obtained personal information;

D. Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiff and Class members are entitled;

E. Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

F. Award Plaintiff and Class members pre- and post-judgment interest as provided by law;

G. Enter such other orders as may be necessary to restore to Plaintiff and Class members any money and property acquired by Defendant through its wrongful conduct;

H. Award Plaintiff and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

I. Award such other and further relief as the Court deems necessary and appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demand a trial by jury of all issues triable as of right.

Dated: September 10, 2026

Respectfully submitted,

*s/ Emil Lippe, Jr.*

Emil Lippe, Jr.
State Bar No. 12398300
Southern District ID No. 4230
**Law Offices of**
**LIPPE & ASSOCIATES**
2911 Turtle Creek Blvd., Ste. 1250
Dallas, TX 75219

Telephone: (214) 855-1850
Email: emil@texaslaw.com

Christian Levis (*pro hac vice* forthcoming)
Amanda G. Fiorilla (*pro hac vice* forthcoming)
Michi Rodriguez (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
Email: clevis@lowey.com
Email: afiorilla@lowey.com
Email: mrodriguez@lowey.com

Anthony M. Christina (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
Email: achristina@lowey.com

*Counsel for Plaintiffs and the Class*